MOORE, Judge.
Paul W. Sullivan (“the husband”) appeals from a divorce judgment entered by the Montgomery Circuit Court to the extent that it divided the parties’ property and awarded Elizabeth Sullivan (“the wife”) alimony. We affirm.

Procedural History

On October 4, 2013, the wife filed a complaint seeking a divorce from, the husband. On December 30, 2013, the husband answered the complaint. After a trial, the trial court entered a judgment on January 14, 2015, that, among other things, divorced the parties; ordered the husband to pay $1,012 per month in child support for the parties’ minor child; ordered that the husband could purchase the wife’s equity in the marital residence or that the house was to be sold by the parties; ordered the husband to pay the mortgage indebtedness and other expenses associat *838 ed with the marital residence pending the husband’s purchase of the wife’s equity or the sale of the house; awarding the wife a 2012 Honda automobile and ordering the husband to pay the indebtedness owed on that vehicle; and awarding the husband a 2000 Dodge automobile and ordering him to pay the indebtedness owed on that vehicle. With regard to periodic alimony, the trial court stated:
“8. Commencing February 1, 2015 and continuing through July, 2015, the Husband shall pay to the Wife the sum of Three Thousand Two Hundred and no/100 ($3,200.00) Dollars per month as periodic alimony. Commencing August 1, 2015, the Husband’s periodic alimony shall increase to Four Thousand and no/100 ($4,000.00) Dollars per month.
“As additional alimony, the Husband shall pay to the Wife twenty-five percent (25%) of the gross amount of all sums received by, from, through, or as a result of the Husband being a beneficiary under The Family Trust dated May 12, 2003.”
On February 13, 2015, the husband filed a postjudgment motion. On May 6, 2015, the trial court entered an order amending the divorce judgment, stating, in pertinent part:
“1. That Paragraph 8 of the Final [Judgment] of Divorce is modified to remove the automatic alimony increase to $4,000.00 per month.
“2. That the second half of Paragraph 8 of the Final [Judgment] of Divorce provided for additional alimony to be paid to the ... Wife.
“3. That the ‘additional alimony’ paragraph is hereby amended to provide that in paying to the ... Wife the 25% of sums received under the family trust the Husband shall be given credit for the $3,200.00 per month alimony paid pursuant to Paragraph 8. Said paragraph is further amended to provide that the ... Husband shall provide, at least semiannually, to the ... Wife a sworn statement setting out the gross amount of all funds.”
On June 15, 2015, the husband filed his notice of appeal.

Discussion

We initially note that the wife has argued in her brief to this court that the husband’s brief is not compliant with Rule 208, Ala. R.App. P. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”). Although we agree that the husband’s brief is not a model of clarity regarding what issues he is presenting for this court’s consideration, we conclude that the husband has adequately addressed, with supporting legal authority, the two issues that the wife discusses in her appellee’s brief to this court: (1) whether the husband’s income from “The Family Trust” (“the trust”) was divisible and (2) whether the division of property and the award of alimony are equitable. We will therefore discuss those two issues herein.
With regard to the trust income, the husband first argues that the provisions of the trust state that his distributions from the trust cannot be used to pay alimony. At the trial, the evidence indicated that the trust document states:
“Except as otherwise provided by law, no power of appointment or power of withdrawal shall be subject to involuntary exercise, and no interest of any beneficiary shall be subject to anticipation, to claims for alimony or support, to voluntarily transfer without the written consent of the Trustee, or to any involuntary transfer in any event.”
*839 We note that the judgment does not award the wife any interest in the trust or require the husband to take any certain distributions from the trust. Instead, subject to a setoff for alimony paid, the wife is entitled to 25% of any distribution that the husband actually receives from the trust. We have reviewed the cases cited by the husband in support of his argument on this point and have found that they do not stand for the proposition that alimony cannot be paid from the distributions the husband actually receives. Therefore, we find no error on this point. See White Sands Grp., 998 So.2d at 1058.
The husband next argues that his distributions from the trust are his separate property and, thus, should not have been considered by the court when fashioning its property division and alimony award. Section 30—2—51(a), Ala.Code 1975, provides:
“If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
In the present case, the husband admitted that distributions from the trust had been deposited into a bank account that was jointly held by him and the wife and that he had paid all the family’s bills out of that account. He testified that the trust distributions had been used to purchase automobiles for the wife and the parties’ children, to pay for the children’s private-school and college tuitions, to renovate the marital residence, and to rent a second house for the family to reside in for a period. We conclude that that evidence is sufficient to prove that the trust distributions had been “used regularly for the common benefit of the parties during their marriage.” § 30—2—51(a); see Bushnell v. Bushnell, 713 So.2d 962, 964 (Ala.Civ.App.1997) (holding that an account had been used regularly for the common benefit of the parties because the funds from that account had been “periodically deposited ... into the joint account” of the parties and used “to pay the joint income taxes, to make the mortgage payment, and to purchase household items, such as the furnace”).
The husband also argues that the trial court’s division of property and its award of alimony were inequitable.
“‘“[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” Philpot v. State, 843 So.2d 122, 125 (Ala.2002). “ ‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’” Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)).'
“Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005).
“‘[T]he ore tenus rule affords a correct and necessary deference to the trial court’s factual findings, recognizing that an appellate court sees only a written record and does not observe the appearance, behavior, and de *840 meanor of live witnesses. The ore tenus rule simultaneously requires the appellate court to review the trial court’s judgment to determine if it is supported by the appropriate level of evidence. The rule thus preserves the safeguards of the standard of proof that was utilized by the trial court without improperly usurping the trial court’s role as fact-finder.’
“J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1185-86 (Ala.Civ.App.2007). Additionally, ‘[a] property division made by a trial court will not be set aside on appeal absent a palpable abuse of its discretion.’ TenEyck v. TenEyck, 885 So.2d 146, 154 (Ala.Civ.App.2003).
“ ‘The purpose of the division of marital property is to give “each spouse the value of [his or her] interest in the marriage. Each spouse has a right, even a property right in this.” ’ Lo Porto v. Lo Porto, 717 So.2d 418, 421 (Ala.Civ.App.1998) (quoting Pattillo v. Pattillo, 414 So.2d 915, 917 (Ala.1982)).
“ ‘On appeal, the issues of alimony and property division must be considered together. The trial court’s judgment on those issues will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. [Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993).] The property division need not be equal, but it must be equitable. Id. The factors the trial court should consider in dividing the marital property include “the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.” Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996).’
“Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000).”
Weeks v. Weeks, 27 So.3d 526, 529 (Ala.Civ.App.2008).
In the present case, the husband testified that his employment income was approximately $74,000 per year. He admitted, however, that he had had an average of $64,600 per year in additional income deposited into the parties’ joint account from trust distributions and also between $2,000 and $16,000 in rental income per year deposited into the joint account. He testified that, in 2013, he had had trust distributions in the amount of $110,000 deposited into the joint account and that, in addition to that amount, there had also been direct payments made by the trust on his behalf totaling $28,300.
The husband testified that, for most of the marriage, he and the wife had agreed that she would not work outside the home and that she would take care of the children. He testified that she had been employed part time in various jobs at times but had earned no more than $8,000 per year. The husband testified that he had not contributed to a retirement account but that he had told the wife that distributions from the trust would be a large part of their retirement. The husband testified that his total debt is $164,000, including the outstanding mortgage indebtedness on the marital residence, the loan indebtedness on the wife’s automobile, the loan indebtedness on the automobile driven by one of the parties’ adult children, the loan indebtedness on the automobile driven by the parties’ minor child, and the balance owed on a credit-card account that he had opened during the parties’ separation. He testified that the value of the marital residence is $150,000, that the mortgage balance is $121,000, and that the monthly mortgage payment is $1,050. The husband testified that he is financially sup *841 porting one of the parties’ adult children. He did not introduce evidence of his total expenses.
The wife testified that, at the time of the trial, she was earning $897 per month and had a savings account with a balance of $11,400. She testified that her expenses are $5,245 per month, which amount, she said, did not include the monthly loan payment on her automobile or any expenses related to the minor child.
Considering only the income deposited into the parties’ joint account, we recognize that the husband has total monthly income of at least $11,550 ($74,000 in employment income + $64,600 from trust distributions = $138,600 + 12 = $11,550). We note that, because the amendment to the judgment awarded the husband a credit of $3,200 (the amount of the monthly periodic-alimony award) against the 25% of the trust distributions to be paid to the wife, our calculations show that, if the husband continues to receive approximately the same amount from the trust that he had received before the divorce, he will not owe any alimony above and beyond the $3,200 per month.[1] Therefore, even after paying his periodic-alimony obligation, the husband will be left with $8,350 per month from which to pay his monthly expenses, including his additional monthly court-ordered obligations, while the wife has only $4,097 per month in income from which to pay her monthly expenses of $5,245.[2]
With regard to the property division, the parties’ property for which a value was assigned at trial consisted only of the marital residence, which was divided equally between the parties. The husband’s interest in the trust was not divided but was, instead, considered as a source of income from which the husband could make his monthly periodic-alimony payments. Based on the foregoing, we cannot conclude that the trial court’s division of property and its award of alimony were inequitable to the husband.

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed. The wife’s request for the award of attorney’s fees on appeal is denied.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Considering the husband’s testimony that, in 2013, he had trust distributions deposited into the joint account in the amount of $110,000 and that the trust had also made direct payments on his behalf in the amount of $28,300, that would total $138,300. Twenty-five percent of $138,300 would be $34,575. Dividing that amount by 12 months yields a monthly amount of $2,881.25, which is less than the $3,200 credit amount. Therefore, no additional alimony would be due.

. In calculating the wife's monthly income, we have not included the amount she was awarded as monthly child support because the $5,245 in monthly expenses she claimed did not include any expenses related to the minor child.